

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

FEB 2 5 2005

MARY BETH CORBETT, )

          Plaintiff, )     Case No. 04 C 3344

v. )     Judge Leinenweber

DRH CAMBRIDGE HOMES, INC., and )     Magistrate Judge Bobrick
D.R. HORTON, INC., )

          Defendants. )

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## DEFENDANT'S MOTION TO COMPEL

Now come Defendants DRH Cambridge Homes, Inc. and D.R. Horton, Inc. by their

attorneys, and pursuant to Fed. R. Civ. 37 (a) move for an order compelling the deposition of

Mary Corbett, compelling complete answers to Defendant's written discovery requests, and for

an order compelling Plaintiff to return an inadvertently produced privileged document. In

accordance with Local Rule 37.2 and as set forth in detail below, Defendants' attorneys have

made a number of efforts to resolve these issues with Plaintiff's attorney; however, despite these

good faith efforts Defendants have been unable to resolve them. In support of these motions,

Defendants state as follows:

      1.     In September 2004, Defendants served Plaintiff with a set of interrogatories and a

request for production of documents. Defendants also served Plaintiff with a notice of the

Plaintiff's deposition, scheduled for October 27, 2004. These documents are attached at Tabs **A,**

**B,** and **C.**

      2.     On October 21, 2004, Plaintiff served objections to certain interrogatories and

production responses, attached at Tabs **D** and **E.** Specifically, she refused to answer

Interrogatories No. 3, 4, 5, 11, 12, and refused to respond to Production requests 4, 14, 15, 16, and 17.

3.      When Plaintiff's counsel failed to confirm the deposition set for October 27, 2004, Defendants agreed to a brief postponement and followed up with a letter seeking a Local Rule 37 conference. See Tab F.

4.      Thereafter, counsel for Defendants left a number of telephone messages for Plaintiff's attorney, which she did not return. Another letter, dated November 11, 2004, was sent to her asking her to call Defendants' attorneys, Tab G.

5.      Finally, on November 17, 2004, Defendants received a written response from Plaintiff's counsel, Tab H, and a LR 37 telephone conference was held on November 29, 2004.

6.      On that date, Plaintiff's counsel refused to provide further responses to the written discovery, but agreed to get back to Defendants' counsel no later than December 10, 2004 with a firm date in January 2005 for the Plaintiff's deposition. She also agreed to provide the overdue federal discovery responses by December 10, 2004.

7.      Plaintiff's attorney provided responses to portions of the federal discovery, Tabs I and J, however, she did not get back to Defendants with a firm date for the deposition of Plaintiff, and accordingly, Defendants served a new notice of deposition in January 2005 setting the deposition for February 1, 2005. Tab K. This was also confirmed by letter.

8.      In the meantime, Defendants' counsel learned that a privileged document had been inadvertently disclosed to Plaintiff's attorney with a letter dated May 30, 2003. The document was "produced back" to Defendants as part of the Rule 34 response. Upon learning of this inadvertent disclosure, Defendants wrote to Plaintiff asking for the letter's return. Tab L.   A copy of the letter in question will be provided for *in camera* inspection by the court.

2

9.     Plaintiff's counsel refused to return the letter. Tab **M**.

10.    Defendants wrote back enclosing a copy of an ABA ethics opinion on the subject of inadvertent disclosure, and requested a LR 37 conference. Tab **N**. Plaintiff's attorney has failed and refused to call Defendants' counsel to discuss this issue.

11.    During the week before the deposition set for February 1, 2005, Defendants' attorneys left several messages for Plaintiff's counsel requesting confirmation of the February 1, 2005 deposition date. Those messages were not returned.

12.    Finally, on January 28, 2005, Defendants counsel received a telephone call from Plaintiff's attorney's office canceling the deposition yet again, using the excuse that there was a court ordered mediation on February 1, 2005, which counsel for the Plaintiff had to cover.

13.    Defendants then wrote to Plaintiff's attorney requesting a new date and a copy of the mediation order, as it appeared to Defendants that Plaintiff's lawyer was not acting in good faith. See Tab **O** . The mediation order was never provided.

11.    Plaintiff's attorney sent several letters back, quarreling about when the attorney was to provide a new date for Ms. Corbett's deposition. See Tabs **P** and **Q**. In any event, a new date of February 25, 2005 was confirmed by Defendants' letter of February 1, 2005. See Tab **R**.

12.    On February 24, 2005, Plaintiff's attorney canceled the deposition for the third time, citing illness of the Plaintiff's son. Tab **S**. Although Plaintiff's attorney once again promises to provide another date, Defendants have no confidence that Plaintiff will be produced without a court order.

WHEREFORE, Defendants request that the court enter an order: (1) ordering Plaintiff to be produced for her deposition to answer questions as to all claims she has made against Defendants (including the state defamation claims) on a date certain; (2) ordering Plaintiff to

3

provide complete responses to the discovery requests; (3) ordering Plaintiff to return the attorney/client letter inadvertently produced in May 2003, and (4) such other relief as the Court deems just and equitable.

Respectfully submitted,

DRH CAMBRIDGE HOMES et al,

By _____
One of Their Attorneys

Joan E. Gale
Kristina Kerwin
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603
(312) 346-8000

February 25, 2005

4

# Tab

# A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARY BETH CORBETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 3344 |
| | ) | |
| DRH CAMBRIDGE HOMES, INC., and | ) | Judge Leinenweber |
| D R HORTON, INC., | ) | |
| | ) | Magistrate Judge Bobrick |
| Defendants. | ) | |

### DEFENDANTS' FIRST SET OF INTERROGATORIES

Defendants DRH Cambridge Homes, Inc. ("Cambridge") and D R Horton, Inc.

("Horton") (collectively "Defendants"), by and through their attorneys, SEYFARTH SHAW

LLP, and pursuant to Fed. R. Civ. P. 33, request that Plaintiff answer the following

Interrogatories in writing and under oath within thirty (30) days after the date of service.

### INTERROGATORY NO. 1:

Identify by name, address, telephone number and employment status all individuals who provided information or assisted in any way or contributed to the preparation of these interrogatory answers and specify to which answer or answers each individual assisted or contributed.

### ANSWER:


### INTERROGATORY NO. 2:

Identify[1] each person whom you believe has knowledge or information concerning each paragraph in your Complaint and Defendants' affirmative defenses and describe in detail the nature of his or her knowledge or information. Identify or produce all documents related to your answer.

### ANSWER:


---

[1]For each Interrogatory asking you to identify a person, please provide the name, address, telephone number and employment status of each such person.

**INTERROGATORY NO. 3:**

Identify each person whom you believe has knowledge or information concerning each paragraph in your Complaint alleging defamation filed in the Circuit Court of Cook County, Law Division, Court No. 04 L 3602 and describe in detail the nature of his or her knowledge or information. Identify or produce all documents related to your answer.

**ANSWER:**

**INTERROGATORY NO. 4:**

If you or anyone acting on your behalf have taken statements from any individual in connection with any of the allegations in this case and/or any allegations of defamation in your state court case, identify the name and address of the individual from whom either you (or your representative) have taken statements, specify the dates that such statements were taken, and provide the information provided from the individual from whom the statement was taken. Identify or produce all documents related to your answer.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all persons (including, but not limited to, Defendants' present or past employees and management personnel and any employee) with whom you had any communication or contact (orally or in writing) regarding any of the matters alleged in the Complaint or Defendants' affirmative defenses, or the Complaint filed in the Circuit Court of Cook County, Court No.: 04 L 3602, or any related facts, events or documents. For each such person, identify and describe each such communication or contact and state the substance thereof. Identify or produce all documents which relate to, refer to, or support your answer.

**ANSWER:**

**INTERROGATORY NO. 6:**

If you have ever filed or otherwise been a party to any legal or administrative action (including, but not limited to, all civil and criminal actions) other than this case in any federal, state or local court or administrative agency, state: (a) the case name and docket number; (b) the court or administrative agency; (c) the subject matter involved; (d) and the outcome. Identify or produce all documents related to your answer.

**ANSWER:**

2

**INTERROGATORY NO. 7:**

Identify separately each item of lost salary and benefits or other damage that you are seeking in this matter and, for each, state the following: (a) the nature of the lost salary and benefits or other damages; (b) the amount of the lost salary and benefits or other damages; (c) the specific manner in which the amount of each item of lost salary and benefits or other damages was calculated; and (d) any facts which you believe support your claim to the specific item of such damage. Identify or produce any document which evidences or supports your claim for lost salary and benefits or other damages.

**ANSWER:**

**INTERROGATORY NO. 8:**

Identify each expert witness or person who will offer opinion testimony in this matter whom you have retained or consulted in connection with this case and, for each such person, state the following:

(a) the individual's full name, title, current business address and telephone number;

(b) the area of his or her expertise;

(c) the individual's background (*e.g.*, education, experience, professional affiliations, certifications, publications, etc.):

(d) the dates on which you or any representative acting on your behalf met or consulted with such expert and identify the information and documents that were provided to such expert by you or your representative at each such meeting;

(e) the subject matter on which the expert was consulted or is expected to testify;

(f) the substance of the facts and opinions to which the expert was consulted or is expected to testify;

(g) a summary of the grounds for each such opinion; and

(h) for each answer, identify all relevant documents.

**ANSWER:**

CHI 10788551.1

## INTERROGATORY NO. 9

Describe all efforts you have made to find other employment since you left Defendants' employ. Include in this description, the name, address, and nature of the business of each employer from whom you sought employment, the date(s) you sought such employment, whether you were offered a position, and if so, the position offered and the amount of salary and benefits of the position.

**ANSWER:**

## INTERROGATORY NO. 10.

Describe all employment, including self employment, that you have had since you left Defendants' employ. Include in this description the name, address and nature of the business, the dates of your employment, the position(s) held, and salary and benefits for which you were eligible.

**ANSWER:**

## INTERROGATORY NO. 11

State the name, address, telephone number and specialty of any health care provider who has treated you at any time for emotional distress or other mental health issues. Identify the condition for which you were treated and the dates of the treatment.

**ANSWER:**

## INTERROGATORY NO. 12.

If not included in your answer to Interrogatory No. 11, state the name, address, telephone number and specialty of any health care provider who has treated you for any condition which you are claiming was caused or aggravated by any action of the Defendants. Identify the condition for which you were treated, the dates of the treatment, and any costs for which you are claiming Defendants are responsible.

**ANSWER:**

4

Respectfully submitted,

**DRH CAMBRIDGE HOMES, INC and
D R HORTON, INC.**

By _____

One of Their Attorneys

Joan E. Gale
K. Kristann Carey
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
(312) 346-8000
(312) 269-8869 (fax)

5

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that she caused a copy of the attached
DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF to be served upon the
following counsel of record by regular mail, first class postage prepaid, this 22nd day of
September, 2004:

> Sharon Finegan Patterson
> 39 South LaSalle Street, Suite 1014
> Chicago, IL 60603


K. Kristann Carey

# Tab

# B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARY BETH CORBETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 04 C 3344 |
| | ) |
| DRH CAMBRIDGE HOMES, INC., and | )    Judge Leinenweber |
| D R HORTON, INC., | ) |
| | )    Magistrate Judge Bobrick |
| Defendants. | ) |

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants DRH Cambridge Homes, Inc. ("Cambridge") and D R Horton, Inc.

("Horton") (collectively "Defendants"), by and through their attorneys, SEYFARTH SHAW

LLP, and pursuant to Fed. R. Civ. P. 34, request that Plaintiff produce the following documents,

as defined in Rule 34, to Defendants within thirty (30) days after the date of service.

1. All documents referenced or identified in response to Defendants' First Set of Interrogatories to Plaintiff, a copy of which has been served upon Plaintiff herewith, including but not limited to any documents relating to any search for or subsequent employment after leaving Defendants' employ.

2. All documents that are or were prepared by you or Defendants at any time during your employment with Defendants and continuing to the present which relate in any manner to any of your claims against Defendants.

3. All documents which in any way relate to communications, either oral or written, between you and any employee, agent or official of Defendants concerning any allegations in the Complaint and/or any incidents, events, facts or occurrences which support or relate to said allegations, including allegations of defamation.

4. All statements received by any persons concerning any of the allegations contained in the Complaint and/or allegations related to your claims for defamation filed in state court.

5. All documents which relate to or in any way bear upon terms and conditions of your employment with Defendants.

6.     All documents submitted to or received from the Equal Employment Opportunity Commission (EEOC) that relate to your charge filed with the EEOC.

7.     All reports, notes, or other written or graphic materials prepared by or for any expert(s) you have retained to assist you in this matter.

8.     All documents that relate to or in any way bear upon each separate item of lost salary and benefits or other damages you are claiming were caused by Defendants.

9.     All documents relating to other demands or claims for lost salary and benefits, damages, lawsuits, grievances, charges, or administrative proceedings filed against another employer to which you are or were a party.

10.     All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count I of Plaintiff's Complaint.

11.     All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count II of Plaintiff's Complaint.

12.     All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count III of Plaintiff's Complaint.

13.     Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count IV of Plaintiff's Complaint.

14.     Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count I of Plaintiff's Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

15.     Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count II of Plaintiff's Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

16.     All documents relating to any claim for emotional distress or any other medical condition that you are claiming was caused or aggravated by any conduct of the Defendants.

17.     All documents relating to any treatment of you at any time for emotional distress or other mental health issues.

2

18.     All documents relating to any interim earnings you had for the period of March 2003 to the present, including but not limited to W-2 forms, 1099's, paystubs, and state and federal income tax returns and schedules thereto.

Respectfully submitted,

**DRH CAMBRIDGE HOMES, INC. and**
**D R HORTON, INC.**

By _____

One of Their Attorneys

Joan E. Gale
K. Kristann Carey
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois  60603
(312) 346-8000
(312) 269-8869 (fax)

3

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a copy of the attached DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS to be served upon the following counsel of record by regular mail, first class postage prepaid, this 22nd day of September, 2004:

> Sharon Finegan Patterson
> 39 South LaSalle Street, Suite 1014
> Chicago, IL 60603

K. Kristann Carey

# Tab

# C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARY BETH CORBETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 3344 |
| | ) | |
| DRH CAMBRIDGE HOMES, INC., and | ) | Judge Leinenweber |
| D R HORTON, INC., | ) | |
| | ) | Magistrate Judge Bobrick |
| Defendants. | ) | |

## NOTICE OF DEPOSITION

TO:   Sharon Finegan Patterson
      39 South LaSalle Street, Suite 1014
      Chicago, IL 60603

PLEASE TAKE NOTICE THAT pursuant to Fed. R. Civ. P. 30, Defendants DRH

Cambridge Homes, Inc. and D R Horton, Inc. will take the deposition upon oral examination of

**MARY BETH CORBETT** on October 27, 2004 at 10:00 a.m. before a certified court reporter at

the offices of Seyfarth Shaw LLP, 55 East Monroe Street, Suite 4200, Chicago, Illinois 60603.

Respectfully submitted,

**DRH CAMBRIDGE HOMES, INC. and**
**D R HORTON, INC.**

By _____
     One of Their Attorneys

Joan E. Gale
K. Kristann Carey
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois  60603
(312) 346-8000
(312) 269-8869 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a copy of the attached NOTICE OF DEPOSITION to be served upon the following counsel of record by regular mail, first class postage prepaid, this 22nd day of September, 2004:

Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

K. Kristann Carey

# Tab
# D

**RECEIVED**

OCT 2 5 2004

**SEYFARTH SHAW**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary Beth Corbett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 3344 |
| | ) | |
| DRH Cambridge Homes, Inc., a corporation, | ) | |
| D.R. Horton, Inc., a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTIONS TO CERTAIN
## INTERROGATORIES OF DEFENDANT

Now comes plaintiff, Mary Beth Corbett, by her attorney, Sharon Finegan Patterson, and objects to certain Interrogatories propounded by defendant as follows:

INTERROGATORY NO.3:

Identify each person whom you believe has knowledge or information concerning each paragraph in your Complaint alleging defamation filed in the Circuit Court of Cook County, Law Division, Court No. 04 L 3602 and describe in detail the nature of his or her knowledge or information. Identify or produce all documents related to your answer.

OBJECTION: **This federal court lawsuit is an employment discrimination case brought under Title VII.** There is not currently any pendent state law claims pending in this federal court lawsuit. The Court's jurisdiction is thus currently limited to the federal Title VII claims before the court in this federal court case.

There is also pending between the parties a different lawsuit in state court which plaintiff previously filed against defendants. That other lawsuit is a state common law defamation claim, Case No. 04 L 3602, pending in Cook County, Illinois.

Defendant's Interrogatory # 3 improperly seeks to use this federal court lawsuit to conduct in federal court the discovery of plaintiff's state court lawsuit claim which must be conducted in plaintiff's state court common law defamation lawsuit. This is impermissible. The state court judge in that defamation lawsuit is solely responsible for supervising discovery of the state law defamation claim in the state court lawsuit. The federal courts do not currently have jurisdiction to supervise the discovery of the state court lawsuit claims of defamation. For this reason alone, this specific request is impermissible.

Defendant is free to issue discovery requests in the state court lawsuit concerning plaintiff's state common law defamation claims in that state court lawsuit.

INTERROGATORY NO.4:

If you or anyone acting on your behalf have taken statements from any individual in connection with any of the allegations in this case and/or any allegations of defamation in your state court case, identify the name and address of the individual from whom either you (or your representative) have taken statements, specify the dates that such statements were taken, and provide the information provided from the individual from whom the statement was taken. Identify or produce all documents related to your answer.

OBJECTION: Please see plaintiff's objections to interrogatory #3 above, incorporated by reference herein.

INTERROGATORY NO.5:

Identify all persons (including, but not limited to, Defendants' present or past employees and management personnel and any employee) with whom you had any communication or contact (orally or in writing) regarding any of the matters alleged in the Complaint or Defendants' affirmative defenses, or the Complaint filed in the Circuit Court of Cook County, Court No.: 04 L 3602, or any related facts, events or documents. For each such person, identify and describe each such communication or contact and state the substance thereof. Identify or produce all documents which relate to, refer to, or support your answer.

OBJECTION: Please see plaintiff's objections to interrogatory #3 above, incorporated by reference herein.

INTERROGATORY NO. 11

State the name, address, telephone number and specialty of any health care provider who has treated you at any time for emotional distress or other mental health issues. Identify the condition for which you were treated and the dates of the treatment.

OBJECTION: Plaintiff objects to the extent that this interrogatory requests that plaintiff disclose any mental health treatment and/or medical treatment for stress received by plaintiff at any time, information which is privileged and undiscoverable under the Illinois Mental Health Confidentiality Act, and HIPPA, and under the federal common law and state statutory and common law. Answering further without waiving said objection, plaintiff states that plaintiff is claiming that she suffered humiliation, embarrassment, and emotional anguish as well as economic losses. These are not "psychiatric disorders" or " psychiatric injuries." These elements of damages are available under Title VII as compensatory damages. Plaintiff is not currently seeking the cost of any medical treatment by any physician or psychologist or psychiatrist in this case and does not plan to have any medical or psychiatric expert testify as to any such injuries or conditions.

INTERROGATORY NO. 12.

If not included in your answer to Interrogatory No. 11, state the name, address, telephone number and specialty of any health care provider who has treated you for any condition which you are claiming was caused or aggravated by any action of the Defendants. Identify the condition for which you were treated, the dates of the treatment, and any costs for which you are claiming Defendants are responsible.

<u>OBJECTION:</u> Please see plaintiff's objections to interrogatory #11 above, incorporated by reference herein.


_____
Attorney for Plaintiff


Sharon Finegan Patterson, P.C.
39 South LaSalle Street
Suite 1014
Chicago, Illinois 60603
312-855-1076

## CERTIFICATE OF SERVICE

I certify that I served the foregoing pleading upon attorney for defendant listed below, by first class mail, proper postage prepaid, on 21st day of October 2004.

Joan E. Gale
Seyfarth Shaw LLP
55 E. Monroe Street
Suite 4200
Chicago, Il 60603
fax 312-269-8869

Eve Miechus

# Tab

# E

RECEIVED

OCT 2 5 2004

SEYFARTH SHAW

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Mary Beth Corbett,                    )
                                      )
            Plaintiff,                )
                                      )
    vs.                               )      04 C  3344
                                      )      Judge Leinenweber
DRH Cambridge Homes, Inc., a corporation,  )   Magistrate Judge Bobrick
D.R. Horton, Inc., a corporation,     )
                                      )
            Defendants.               )

## PLAINTIFF'S OBJECTIONS TO CERTAIN PRODUCTION REQUESTS IN DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Now comes plaintiff, Mary Beth Corbett, by her attorney, Sharon Finegan Patterson, and objects to certain requests in defendant's first request to produce as follows:

4. All statements received by any persons concerning any of the allegations contained in the Complaint and/or allegations related to your claims for defamation filed in state court.

OBJECTION: **This federal court lawsuit is an employment discrimination case brought under Title VII.** There is not currently any pendent state law claims pending in this federal court lawsuit. The Court's jurisdiction is thus currently limited to the federal Title VII claims before the court in this federal court case.

There is also pending between the parties a different lawsuit in state court which plaintiff previously filed against defendants. That other lawsuit is a state common law defamation claim, Case No. 04 L 3602, pending in Cook County, Illinois.

Defendant's Request to Produce # 4 improperly seeks to use this federal court lawsuit to conduct in federal court the discovery of plaintiff's state court lawsuit claim which must be conducted in plaintiff's state court common law defamation lawsuit. This is impermissible. The state court judge in that defamation lawsuit is solely responsible for supervising discovery of the state law defamation claim in the state court lawsuit. The federal courts do not currently have jurisdiction to supervise the discovery of the state court lawsuit claims of defamation. For this reason alone, this specific request is impermissible.

Defendant is free to issue discovery requests in the state court lawsuit concerning plaintiff's state common law defamation claims in that state court lawsuit.

14. Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count I of Plaintiffs Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

ANSWER: Please see plaintiff's objection to request to produce number 4 above, incorporated by reference herein.

15. Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count II of Plaintiffs Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

ANSWER: Please see plaintiff's objection to request to produce number 4 above, incorporated by reference herein.

16. All documents relating to any claim for emotional distress or any other medical condition that you are claiming was caused or aggravated by any conduct of the Defendants.

ANSWER: Plaintiff objects to the extent that this request to produce requests that plaintiff disclose **any** mental health treatment and/or medical treatment for stress received by plaintiff **at any time**, information which is privileged and undiscoverable under the Illinois Mental Health Confidentiality Act, and HIPPA, and under the federal common law and state statutory and common law. Answering further without waiving said objection, plaintiff states that plaintiff is claiming that she suffered humiliation, embarrassment, and emotional anguish as well as economic losses. These are not "psychiatric disorders" or " psychiatric injuries." These elements of damages are available under Title VII as compensatory damages. Plaintiff is not currently seeking the cost of any medical treatment by any physician or psychologist or psychiatrist in this case and does not plan to have any medical or psychiatric expert testify as to any such injuries or conditions. Subject to that objection, plaintiff will produce other documents, if any, that relate to her claims that she suffered emotional distress, anguish, humiliation, and embarrassment as a result of defendant's illegal conduct.

17. All documents relating to any treatment of you at any time for emotional distress or other mental health issues.

ANSWER: Please see plaintiff's response to request to produce number 16 above, incorporated by reference herein.

Attorney for Plaintiff

Sharon Finegan Patterson, P.C.
39 South LaSalle Street
Suite 1014
Chicago, Illinois 60603
312-855-1076

## CERTIFICATE OF SERVICE

I certify that I served the foregoing pleading upon attorney for defendant listed below, by first class mail, proper postage prepaid, on 21st day of October 2004.

Joan E. Gale
Seyfarth Shaw LLP
55 E. Monroe Street
Suite 4200
Chicago, Il 60603
fax 312-269-8869

# Tab

# F

(312) 269-8862

jgale@scyfarth.com

October 28, 2004

**VIA FACSIMILE & U.S. MAIL**
**(312) 782-1332**

Sharon Finegan Patterson, Esq.
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

> **Re:** *Mary Corbett v. DRH Cambridge Homes et al*

Dear Ms. Patterson:

This is in response to your letters of October 21 and 25, 2004, both of which were received on October 25, 2004, as noted in your second letter. We have agreed to postpone the deposition of Ms. Corbett, which we had noticed for October 27, 2004; however, we would like to proceed with her deposition as soon as possible. Please provide me with some available dates in November or early December. I am out of the office the week of November 22, 2004.

Please consider this letter a request for a LR 37 conference regarding your objections to our written discovery requests in the federal case. We have no objection to a brief extension of time for you to answer the discovery. As to your objections on the scope, we served you with these discovery requests prior to the ruling on the motion to dismiss your state court case, so at that time, it was unclear whether your state court matter would continue. That is still an open issue because Judge Kogan's order requires you to file an amended complaint.

While we recognize that there are different issues of proof between the two claims, we believe that it is in the interests of both sides to keep the discovery costs reasonable by taking discovery on all of Ms. Corbett's claims at the same time. I do not see any legitimate reason for issuing multiple discovery requests to you (or to have them issued to the Defendants) and we have no intention of deposing Ms. Corbett twice, unless a court orders it.

As to your objections regarding discovery on emotional distress, I ask that you reconsider your position. We believe the information we are seeking is entirely relevant to her claim. If you refuse to allow discovery on this issue, Ms. Corbett may be barred from seeking compensatory damages at trial.

Sharon Finegan Patterson, Esq.
October 28, 2004
Page 2

I look forward to discussing these issues with you in more detail.  Please call me.

Very truly yours,

SEYFARTH SHAW LLP

Joan E. Gale

JEG:kr
cc:    Steven H. Goodman, Esq.
       David Morice, Esq.
       Kristann Carey, Esq.

# Tab

# G

(312) 269-8863

kcarey@seyfarth.com

November 11, 2004

**VIA FACSIMILE (312) 782-1332**

Sharon Finegan Patterson
Sharon Finegan Patterson, P.C.
39 S. LaSalle Street, Suite 1014
Chicago, IL 60603

      Re:    Corbett v. DRH Cambridge Homes, Inc. and D R Horton, Inc.
             Court No.: 04 C 3344

Dear Ms. Patterson:

      On November 10, 2004, I left a message with your office requesting that you contact me to discuss, pursuant to LR 37, your objections to our written discovery requests in the Federal case and have not received a response. We have previously responded to your objections in a correspondence dated October 28, 2004. We have not received a response from you regarding those objections. Additionally, although we are willing to provide plaintiff with an extension of time to answer the written discovery, which has not been objected to, plaintiff's responses were due almost three weeks ago. Additionally, we have asked on several occasions that you provide us with some available dates in November or early December that Ms. Corbett would be available for her deposition.

      Please consider this our final request for an LR 37 conference regarding plaintiff's outstanding discovery plaintiff's objections to certain of defendant's written discovery requests, and to schedule a date certain for plaintiff's deposition. If we do not receive a response from you within the next seven days, we will be required to seek court intervention.

      Should you have any further questions, please feel free to contact the undersigned or Joan Gale.

                      Very truly yours,

                      SEYFARTH SHAW LLP

                      K. Kristann Carey

cc:    Joan E. Gale
       Steven H. Goodman
       David T. Morice

CH1 10815179.1

# Tab

# H

**SHARON FINEGAN PATTERSON, P.C.**
ATTORNEY AT LAW
39 SOUTH LASALLE STREET- SUITE 1014
CHICAGO, ILLINOIS 60603

TELEPHONE   (312) 855-1076
FACSIMILE    (312) 782-1332

November 17, 2004

By Facsimile
Ms. Kristann Carey
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re: Mary Corbett v. DRH Cambridge Homes,
Inc. and D.R. Horton, Inc., Case No. 04 C 3344

Dear Ms. Carey:

You asked me to get back to you by today. I am responding to your request that we schedule an LR 37 conference. I request that we schedule the LR 37 conference for Tuesday, November 23, 2004 at 1:00 p.m, the reason being that I am currently out of the office and will not return to the office until Monday or Tuesday, depending upon how my son's recuperation goes. ( I am picking my son up from college early and will bring him to the oral surgeon on Friday morning November 19, 2004 for his surgery). I trust that you understand and that you can wait a few days for our conference (until November 23, 2004) in light of this.

Thank you in advance for your cooperation in this regard.

Very truly yours,

*Sharon Finegan Patterson* /EM.

Sharon Finegan Patterson/em
(Dictated)

Encl/em

**SHARON FINEGAN PATTERSON, P.C.**
ATTORNEY AT LAW
39 SOUTH LASALLE STREET- SUITE 1014
CHICAGO, ILLINOIS 60603

TELEPHONE    (312) 855-1076
FACSIMILE     (312) 782-1332

December 14, 2004

By Facsimile
Ms. Kristann Carey
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re:    Mary Corbett v. DRH Cambridge Homes,
Inc. and D.R. Horton, Inc.

Dear Ms. Carey:

Enclosed please find a copy of Plaintiff's Responses to Interrogatories and Responses to Request to Produce which I had hoped to mail to you on Friday, December 10, 2004. The documents are still being copied. I will try to have them delivered to you today. This way you will have the plaintiff's discovery responses in hand two business days after they were supposed to have been mailed to you, i.e., approximately at the same time as if they had been mailed on Friday, December 10, 2004. Thank you.

Very truly yours,

Sharon Finegan Patterson

Encl/em

# Tab

# I

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary Beth Corbett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 3344 |
| | ) | |
| DRH Cambridge Homes, Inc., a corporation, | ) | |
| D.R. Horton, Inc., a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ADDITIONAL RESPONSES TO INTERROGATORIES

Now comes plaintiff, Mary Beth Corbett, by her attorney, Sharon Finegan Patterson, and, in addition to the objections contained in plaintiff's previously served set of objections, plaintiff provides the following additional responses in response to the Interrogatories propounded by defendants:

INTERROGATORY NO.1:
Identify by name, address, telephone number and employment status all individuals who provided information or assisted in any way or contributed to the preparation of these interrogatory answers and specify to which answer or answers each individual assisted or contributed.

ANSWER: Mary Corbett, 771 Long Meadow Ct., Carol Stream, IL 60188, telephone number 630-893-7777.

INTERROGATORY NO.2:
Identify each person whom you believe has knowledge or information concerning each paragraph in your Complaint and Defendants' affirmative defenses and describe in detail the nature of his or her knowledge or information. Identify or produce all documents related to your answer.

ANSWER: Plaintiff believes that the following persons have knowledge concerning the allegations contained in her complaint. Plaintiff believes that defendants possess information that is relevant to this question and plaintiff requests that defendants provide such information to plaintiff. Plaintiff reserves the right to amend, supplement and revise this response as additional information is obtained through discovery and further investigation.

The following persons who are believed to have knowledge are all currently or were employed by defendant in managerial positions or as officers of defendants. Plaintiff requests that defendants produce their last known residence addresses and residence telephone numbers and the address of the specific office at which they regularly conduct business on behalf of

1

defendants. Dick Brown, Doug Brown, Dave Smith, Phil Walters, Russ Schlatter, Bob Hinz, Jerry Conrad, Tracy Exon in Human Resources, and Danielle in Human Resources, Paula-Hunter Perkins in Human Resources, Andy Simac, Ernie Dote (phonetic), Paul Templeton, Eric Nelson, Steve Meantz, and Steven Goodman, in-house attorney employed by defendants. These persons are believed to have knowledge of: the plaintiff's good work performance, the defendants' illegal conduct toward plaintiff which constituted violations of the discrimination and retaliation laws, including but not limited to the pretextual conduct by defendants, and the illegality of the defendants' actions toward plaintiff which warrant the imposition of punitive damages in this particular case, plaintiff's damages that she sustained as a result of defendants' illegal conduct, and defendants' violation of other laws including the Equal Pay Act and the Fair Labor Standards Act and the Illinois Wage Payment and Collection Act as they pertained to plaintiff.

It is also believed that members on plaintiff's sales team have knowledge of facts that may be relevant to the pretext and discrimination and retaliation allegations in this case: Rose Perri, Angela Graziano, Laurie Aubuchon, Michele Pappas, and Lana Kosina. Also, members of plaintiff's Peach Creek sales team also have knowledge of facts relevant to these issues: Kristie Fiorito, Joanna Ottley, Kelly Leahy.

Plaintiff's mother, Francis Lindquist, 3608 Pheasant Drive, Rolling Meadows, Illinois 60008 also has knowledge of facts pertaining to the defendants' discrimination and retaliation and illegal conduct toward plaintiff and concerning plaintiff's damages that she suffered as a result of the defendants' illegal conduct.

It is believed that many others employed by defendants also have knowledge concerning the defendants' illegal conduct toward plaintiff and concerning the damages that she suffered as a result. These persons include: Mike Binz and all of the other employees who reported directly or indirectly to or worked under the supervision of Phil Walters and/or Dave Smith. Plaintiff requests that defendant produce the names, last known residence addresses and last known residence telephone numbers of those employees. Plaintiff's investigation continues and plaintiff reserves the right to amend, supplement or revise this response as additional information is recalled or obtained in discovery or through further investigation.

Please see the EEOC file, plaintiff's personnel file, and the detailed allegations in plaintiff's complaint. It is believed that defendants may possess additional documents or information that may be relevant to this question and plaintiff has requested that defendants disclose such information in discovery. Plaintiff has not yet received defendants' discovery responses. Plaintiff reserves the right to amend, supplement or revise this answer if additional information is obtained or recalled; investigation continues.

INTERROGATORY NO.6:
If you have ever filed or otherwise been a party to any legal or administrative action (including, but not limited to, all civil and criminal actions) other than this case in any federal, state or local court or administrative agency, state: (a) the case name and docket number; (b) the court or

administrative agency; (c) the subject matter involved; (d) and the outcome. Identify or produce all documents related to your answer.

ANSWER: Plaintiff objects to this interrogatory as phrased in that it is over broad and calls for irrelevant information which is not reasonably calculated to lead to the discovery of relevant information. Without waiving said objections, plaintiff states: none involving any employer or former employer except for the charge and this lawsuit filed against defendants, a copy of which defendants already possess. Additionally, also without waiving her objections, plaintiff states that she also was a party to her own divorce proceedings many years ago, which is also completely irrelevant, and additionally there was a recent claim made by a person (Pandrea Johnson) pertaining to an automobile accident that occurred when plaintiff allowed her babysitter to use her car. (Plaintiff was not driving or in the car at the time.) Finally, more than 20 years ago, plaintiff received a personal injury to her finger and some type of a claim was made for that.

### INTERROGATORY NO. 7:
Identify separately each item of lost salary and benefits or other damage that you are seeking in this matter and, for each, state the following: (a) the nature of the lost salary and benefits or other damages; (b) the amount of the lost salary and benefits or other damages; (c) the specific manner in which the amount of each item of lost salary and benefits or other damages was calculated; and (d) any facts which you believe support your claim to the specific item of such damage. Identify or produce any document which evidences or supports your claim for lost salary and benefits or other damages.

ANSWER: Prior to her termination on March 28, 2003, Ms. Corbett earned on the average approximately $200,000.00 per year. Please see documents produced herein showing plaintiff's earnings in 2003 and 2004 before and after defendants illegally terminated her employment. These documents show that in the year 2003 alone, as a result of defendants' illegal termination of her, she lost more than $110,000.00 in income that she would have earned with defendants in 2003. She was then only 39 years old. She was in good health (except for the anxiety and its related manifestations that she suffered as a result of Respondents' illegal conduct). Her remaining working life exceeds 35 years. Ms. Corbett participated in the Respondents' benefits plans and their group health plans. Her damages for lost earnings and benefits alone are into the seven figures range. (Even an extremely conservative use of a three year front pay period still leaves her with a damages total for this single component of damages in excess of $500,000.00.) Please see documents produced herein showing also her past earnings with defendants and her earnings subsequent to her termination.

Additionally, plaintiff is seeking expense reimbursements that are still due her. After she was terminated, defendants illegally attempted to condition payment of her expense reimbursement upon her releasing defendants from liability. Plaintiff would not agree to this illegal condition. Defendants' counsel was informed of this fact and still defendants refused to pay plaintiff the expense reimbursements due her. Under the state and federal laws, plaintiff is entitled to recover this expense reimbursement (approximately $540.00, see documents enclosed) plus interest, attorneys' fees, costs, and liquidated damages and/or punitive damages

3

for defendants' wilfully illegal conduct. Plaintiff also reserves the right to amend the complaint to allege the violations of these statutes in one or more separate counts.

Plaintiff is also claiming damages for the loss of insurance and other benefits that she would have had if defendants had not acted illegally and terminated her employment. This includes at the very least:

> COBRA insurance premiums:$236.000 per month for 9 months, plus
> $294.00 per month for 9 months.
> (See documents produced herein.)

Value of life insurance benefit and other insurance benefits and flex reimbursement accounts and disability insurance benefits that plaintiff lost as a result of defendants' illegal termination of plaintiff. Note that plaintiff is investigating these values and these damages and is requesting that defendants produce information on these subjects; plaintiff reserves the right to amend or supplement or revise this answer as additional information is obtained or discovered. Please also see the document produced herein entitled "D.R. Horton, Inc. 2002 Insurance Benefit Statement."

Value of Cafeteria Plan and 401(k) benefits and other benefits lost as a result of defendants' illegal termination of plaintiff. Note that plaintiff is investigating the other benefits that she lost and the value of same which she is also claiming as damages in this case, and plaintiff requests that defendants produce information on these subjects; plaintiff reserves the right to amend or supplement or revise this answer as additional information is obtained or discovered.

Plaintiff also seeks compensatory damages in excess of $100,000.00 for the mental anguish, humiliation, and embarrassment that defendants caused her to suffer as a result of the defendants' illegal conduct.

Plaintiff also seeks punitive damages in excess of $500,000.00 for the defendants' wilful or reckless violation of the laws prohibiting discrimination and retaliation in the workplace.

Plaintiff also seeks prejudgment interest, attorneys' fees, plus costs.

Plaintiff also seeks lost future earning capacity damages which the federal discrimination and retaliation laws permit plaintiff to recover.

Plaintiff also seeks other equitable relief, including front pay in lieu of reinstatement, that defendants' workplace be monitored for discrimination and retaliation, that defendants be required to conduct training of its employees and management and officers on these subjects, and such other equitable relief as the Court and the law allows.

4

Plaintiff believes that defendants possess additional information that is relevant to this question and plaintiff has requested that defendants provide this information to plaintiff. Plaintiff reserves the right to amend this answer and/or to supplement it or revise it when additional information becomes available or is discovered or recalled.

## INTERROGATORY NO.8:

Identify each expert witness or person who will offer opinion testimony in this matter whom you have retained or consulted in connection with this case and, for each such person, state the following:

    (a) the individual's full name, title, current business address and telephone number;

    (b) the area of his or her expertise;

    (c) the individual's background *(e.g.,* education, experience, professional affiliations, certifications, publications, etc.):

    (d) the dates on which you or any representative acting on your behalf met or consulted with such expert and identify the information and documents that were provided to such expert by you or your representative at each such meeting;

    (e) the subject matter on which the expert was consulted or is expected to testify;

    (f) the substance of the facts and opinions to which the expert was consulted or is expected to testify;

    (g) a summary of the grounds for each such opinion; and (h) for each answer, identify all relevant documents.

ANSWER: None retained to testify to date but plaintiff reserves the right to disclose such witnesses in accordance with the Federal Rules of Civil Procedure and the court's orders and will make such disclosures at a later date.

## INTERROGATORY NO.9

Describe all efforts you have made to find other employment since you left Defendants' employ. Include in this description, the name, address, and nature of the business of each employer from whom you sought employment, the date(s) you sought such employment, whether you were offered a position, and if so, the position offered and the amount of salary and benefits of the position.

ANSWER: Plaintiff made numerous telephone calls and had many conversations with a number of people in the industry in an attempt to explore employment opportunities in that industry. She was not able to obtain any job interviews or to receive any job offers. Plaintiff is a single mother of two children and had to provide for her family. She performed whatever work she could find on an interim basis, see documents produced herein. She ultimately formed a sales and marketing consulting business called Success Builders, LLC, located at 109 S. First Street, Bloomingdale, Illinois 60108. She is not paid a regular paycheck, wage or salary. She takes draws on an as-needed basis and is ultimately paid by year-end the profits that are left after expenses are paid. Please see the documents produced for information concerning her income that she earned in 2003 after she left defendants' employment.

5

Additionally, for the year 2004, plaintiff's taxable income has not yet been calculated by her accountant and plaintiff is not an accountant or a tax expert; accordingly, plaintiff does not currently know the correct income and taxable income figures. Plaintiff will rely upon her accountant's figures for her income and taxable income for tax year 2004. Plaintiff agrees to supplement and revise this response and to produce her 2004 tax return when her 2004 tax return is prepared.. Without waiving the foregoing and keeping in mind that she is not an accountant or a tax expert, plaintiff anticipates that her taxable income earned in her business in 2004 will be approximately $40,000.00-$50,000.00. Plaintiff reserves the right to amend and revise this response after her accountant calculates the correct figures.

## INTERROGATORY NO. 10.

Describe all employment, including self employment, that you have had since you left Defendants' employ. Include in this description the name, address and nature of the business, the dates of your employment, the position(s) held, and salary and benefits for which you were eligible.

ANSWER: Please see answer to interrogatory # 9 above and documents produced herein

Attorney for Plaintiff

Sharon Finegan Patterson, P.C.
39 South LaSalle Street
Suite 1014
Chicago, Illinois 60603
312-855-1076

6

## VERIFICATION

I certify that I have reviewed the foregoing responses and answers to discovery and I state that

the allegations and facts contained therein are true and correct.

_Mary Beth Corbett_
Mary Beth Corbett

## CERTIFICATE OF SERVICE

I certify that I served the foregoing pleading upon the attorney for defendants listed below, by hand delivery, on the 14th day of December 2004.

K. Kristann Carey
Seyfarth Shaw LLP
55 E. Monroe Street
Suite 4200
Chicago, Il 60603

7

# Tab

# J

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary Beth Corbett, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 3344 |
| | ) | Judge Leinenweber |
| DRH Cambridge Homes, Inc., a corporation, | ) | |
| D.R. Horton, Inc., a corporation, | ) | Magistrate Judge Bobrick |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ADDITIONAL RESPONSES TO FIRST REQUEST TO PRODUCE

Now comes plaintiff, Mary Beth Corbett, by her attorney, Sharon Finegan Patterson, and in response to the Request for Production propounded by defendant states as follows:

1. All documents referenced or identified in response to Defendants' First Set of Interrogatories to Plaintiff, a copy of which has been served upon Plaintiff herewith, including but not limited to any documents relating to any search for or subsequent employment after leaving Defendants' employ.

ANSWER: In addition to the documents that defendants previously produced to plaintiff's counsel herein, please see the EEOC file, plaintiff's personnel file, and the detailed allegations in plaintiff's complaint and the additional documents produced herein. It is believed that defendants may possess additional documents or information that may be relevant to this question and plaintiff has requested that defendants disclose such information in discovery. Plaintiff has not yet received defendants' discovery responses. Plaintiff reserves the right to amend, supplement or revise this answer if additional information is obtained or recalled; investigation continues.

2. All documents that are or were prepared by you or Defendants at any time during your employment with Defendants and continuing to the present which relate in any manner to any of your claims against Defendants.

ANSWER: Please see response #1.

3. All documents which in any way relate to communications, either oral or written, between you and any employee, agent or official of Defendants concerning any allegations in the Complaint and/or any incidents, events, facts or occurrences which support or relate to said allegations, including allegations of defamation.

ANSWER: Plaintiff objects to that portion of this request herein that asks for information pertaining to the plaintiff's state court complaint. Without waiving those objections, plaintiff responds further and states: see response # 1.

4. All statements received by any persons concerning any of the allegations contained in the Complaint and/or allegations related to your claims for defamation filed in state court.

ANSWER: Please see response # 3.

5. All documents which relate to or in any way bear upon terms and conditions of your employment with Defendants.

ANSWER: Please see response # 1.

6. All documents submitted to or received from the Equal Employment Opportunity Commission (EEOC) that relate to your charge filed with the EEOC.

ANSWER: Please see response # 1.

7. All reports, notes, or other written or graphic materials prepared by or for any expert(s) you have retained to assist you in this matter.

ANSWER: Plaintiff has not yet retained an expert but reserves the right to do so.

8. All documents that relate to or in any way bear upon each separate item of lost salary and benefits or other damages you are claiming were caused by Defendants.

ANSWER: Please see response # 1 and plaintiff's interrogatory answer to interrogatory number #7 and documents produced herein.

9. All documents relating to other demands or claims for lost salary and benefits, damages, lawsuits, grievances, charges, or administrative proceedings filed against another employer to which you are or were a party.

ANSWER: None.

10. All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count I of Plaintiff's Complaint.

ANSWER: Please see response # 1.

11. All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count II of Plaintiff's Complaint.

ANSWER: Please see response # 1.

12. All documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count III of Plaintiff's Complaint.

ANSWER: Please see response # 1.

13. Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained in Count IV of Plaintiff's Complaint.

ANSWER: Please see response # 1.

14. Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count I of Plaintiff's Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

ANSWER: Please see plaintiff's previously served objections.

15. Any and all documents which relate to, bear upon or provide evidence relating to the allegations, as contained Count II of Plaintiff's Complaint filed in the Circuit Court of Cook County, Law Division, Court No.: 04 L 3602.

ANSWER: Please see plaintiff's previously served objections.

16. All documents relating to any claim for emotional distress or any other medical condition that you are claiming was caused or aggravated by any conduct of the Defendants.

ANSWER: Please see plaintiff's previously served objections and the documents produced herein and plaintiff's answers to interrogatories.

17. All documents relating to any treatment of you at any time for emotional distress or other mental health issues.

ANSWER: Please see plaintiff's previously served objections.

18. All documents relating to any interim earnings you had for the period of March 2003 to the present, including but not limited to W-2 forms, 1099's, pay stubs, and state and federal income tax returns and schedules thereto.

ANSWER: Please see response # 1.

Attorney for Plaintiff

Sharon Finegan Patterson, P.C.
39 South LaSalle Street, Suite 1014
Chicago, Illinois 60603
312-855-1076

## CERTIFICATE OF SERVICE

I certify that I served the foregoing pleading upon the attorney for defendants listed below, by hand delivery, on the 14th day of December 2004.

K. Kristann Carey
Seyfarth Shaw LLP
55 E. Monroe Street
Suite 4200
Chicago, Il 60603

# Tab

# K



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                                   |   |                           |
|-----------------------------------|---|---------------------------|
| MARY BETH CORBETT,                | ) |                           |
|                                   | ) |                           |
| Plaintiff,                        | ) |                           |
|                                   | ) |                           |
| v.                                | ) | Case No. 04 C 3344        |
|                                   | ) |                           |
| DRH CAMBRIDGE HOMES, INC., and    | ) | Judge Leinenweber         |
| D R HORTON, INC.,                 | ) |                           |
|                                   | ) | Magistrate Judge Bobrick  |
| Defendants.                       | ) |                           |

## <u>AMENDED NOTICE OF DEPOSITION</u>

TO:  Sharon Finegan Patterson
     39 South LaSalle Street, Suite 1014
     Chicago, IL 60603

PLEASE TAKE NOTICE THAT pursuant to Fed. R. Civ. P. 30, Defendants DRH

Cambridge Homes, Inc. and D R Horton, Inc. will take the deposition upon oral examination of

**MARY BETH CORBETT** on February 1, 2005 at 10:00 a.m. before a certified court reporter at

the offices of Seyfarth Shaw LLP, 55 East Monroe Street, Suite 4200, Chicago, Illinois 60603.

Respectfully submitted,

**DRH CAMBRIDGE HOMES, INC. and
D R HORTON, INC.**

By _____
   One of Their Attorneys

Joan E. Gale
K. Kristann Carey
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
(312) 346-8000
(312) 269-8869 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a copy of the attached AMENDED NOTICE OF DEPOSITION to be served upon the following counsel of record by regular mail, first class postage prepaid, this 20th day of December, 2004:

Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

_K. Kt Ce_____
K. Kristann Carey

# Tab

# L

(312) 269-8862

jgale@seyfarth.com

December 23, 2004

**VIA FACSIMILE & U.S. MAIL**
**(312) 782-1332**

Sharon Finegan Patterson, Esq.
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

      *Re:   Mary Corbett v. DRH Cambridge Homes et al*

Dear Ms. Patterson:

      I just reviewed the documents you produced and noticed that a one-page letter to me from Steve Goodman dated May 30, 2003 was included in your production. Since I know that I never instructed my assistant to send this privileged letter to you, this letter and the cover page transmitting it to me were inadvertently included with documents I sent to you with my letter of June 2, 2003. That letter was very clear as to what was intended to be enclosed, as I listed the documents individually. Although the letter was clearly marked "attorney/client communication, privileged and confidential" and it should have been clear that the disclosure was inadvertent, you failed to bring this to my attention and instead produced it to me, nearly 18 months later. This letter is to advise you that the disclosure was inadvertent and we are not waiving privilege with respect to the letter or the issues raised therein. Please destroy all copies of the letter and fax cover sheet or return them to me.

      I also want to bring to your attention that some of the letters between you and me on this matter that were also produced contain your handwritten comments. Your handwritten comments also appear on the Goodman letter. As your production of these documents with your own comments also appears to be an inadvertent disclosure on your part, I await your instructions.

Sharon Finegan Patterson, Esq.
December 23, 2004
Page 2

Thank you for your anticipated cooperation.

Very truly yours,

SEYFARTH SHAW LLP


Joan E. Gale

JEG:kr
cc:    Steven H. Goodman, Esq.
       David Morice, Esq.
       Kristann Carey, Esq.

# Tab
# M

**RECEIVED**

DEC 3 0 2004

SEYFARTH SHAW

**SHARON FINEGAN PATTERSON, P.C.**
ATTORNEY AT LAW
39 SOUTH LASALLE STREET- SUITE 1014
CHICAGO, ILLINOIS 60603

TELEPHONE (312) 855-1076
FACSIMILE (312) 782-1332

**COPY**

December 28, 2004

By First Class Mail
Ms. Joan Gale
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re: Mary Corbett v. DRH Cambridge Homes,
Inc. and D.R. Horton, Inc., Case No. 04 C 3344

Dear Ms. Gale:

It puzzles me that after I told you in December that I would be out of the office on dates including December 23, 2004 you then proceeded to send me a letter on December 23, 2004 knowing that I would not be there to see the letter.

In any event, I am dictating this response to your December 23, 2004 letter. For the record, I do not agree with your position that there was any attorney-client privilege that attached to the letter and documents or that there has been no waiver of the attorney-client privilege, if any ever existed, or that you are somehow now entitled to invoke any protections whatsoever on the letter and its attachments that you knowingly produced to me long ago. I do not agree that your production of the documents and the letter was inadvertent or that, in any event, you have timely raised any right to seek protections upon the disclosure of the documents and letter. The letter and its attachments are very relevant to the issues in this matter.

I trust that this makes my position very clear.

Very truly yours,

*Sharon F. Patterson* EM.

Sharon Finegan Patterson/em

(Dictated)

# Tab

# N



55 East Monroe Street

Suite 4200

Chicago, IL 60603-5803

312-346-8000

fax 312-269-8869

www.seyfarth.com

Writer's direct phone
(312) 269-8862

Writer's e-mail
jgale@seyfarth.com

January 11, 2005

Sharon Finegan Patterson
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

    Re:    Mary Corbett v. DRH Cambridge Homes et al

Dear Ms. Patterson:

    This letter is in response to your letter of December 28, 2004 regarding my letter on inadvertent disclosure. I am enclosing a copy of the ABA's Formal Opinion 92-368, which I ask that you review and then call me to discuss pursuant to Fed. R. Civ. P. 37. Thank you.

    Very truly yours,

    SEYFARTH SHAW LLP

    Joan E. Gale

JEG:kr
cc:    Steven H. Goodman, Esq.
      David Morice, Esq.

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA

factory solution may be the retention of another lawyer solely for the purpose of examining the principal lawyer's client.[18]

### Formal Opinion 92-368
### November 10, 1992

#### Inadvertent Disclosure of Confidential Materials

*A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.*

The Committee has been asked to opine on the obligations under the Model Rules of Professional Conduct of a lawyer who comes into possession of materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the materials were not intended for the receiving lawyer. The question posed includes situations in which the sending lawyer has notified the receiving lawyer of the erroneous transmission and has requested return of the materials sent as well as those situations in which the inadvertent sending lawyer and his client remain ignorant that the materials were missent. It also extends to situations in which the receiving lawyer has already reviewed the materials as well as those in which the sending lawyer intercedes before the receiving lawyer has had such an opportunity. This opinion is intended to answer a question which has become increasingly important as the burgeoning of multi-party cases, the availability of xerography and the proliferation of facsimile machines and electronic mail make it technologically ever more likely that through inadvertence, privileged or confidential materials will be produced

to opposing counsel by no more than the pushing of the wrong speed dial number on a facsimile machine.

A satisfactory answer to the question posed cannot be drawn from a narrow, literalistic reading of the black letter of the Model Rules. But it is useful, and necessary, to bear in mind the thoughts in the Preamble to the Model Rules that "many difficult issues of professional discretion ... must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules," and that "the Rules do not exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules." In that larger, and more fundamental, framework, the Committee's views, expressed in this opinion, have been informed by (i) the importance the Model Rules give to maintaining client confidentiality, (ii) the law governing waiver of the attorney-client privilege, (iii) the law governing missent property, (iv) the similarity between the circumstances here addressed and other conduct the profession universally condemns, and (v) the receiving lawyer's obligations to his client.

Giving due weight to each of the foregoing considerations, it is the view of the Committee that the receiving lawyer, as a matter of ethical conduct contemplated by the precepts underlying the Model Rules, (a) should not examine the materials once the inadvertence is discovered, (b) should notify the sending lawyer of their receipt and (c) should abide by the sending lawyer's instructions as to their disposition.

### I. Confidentiality

The concept of confidentiality is a fundamental aspect of the right to the effective assistance of counsel. As reflected in each iteration of the rules of professional

---

(5th Cir. 1971) (reversing trial court order imputing local counsel's disqualification to a co-counsel firm serving as trial counsel).

[18]This is a possibility suggested in *Jeffers*, 520 F 2d at 1266.

responsibility, the obligation of the lawyer to maintain and to refuse to divulge client confidences is virtually absolute. The confidentiality principle rests on the vital importance society places upon the "full, free and frank" exchange between lawyer and client, shielded from the intrusive eyes and ears of adverse parties, the government, the media and the public. The principle's primary basis is that, absent the guarantee of confidentiality, critical discussions will be either proscribed, circumscribed or intruded upon in a way that will impact directly on the ability of the lawyer to serve his or her client. If the lawyer cannot gather all the necessary information and is not free to explore with the client the client's options, free from the threat that these confidential communications will be shared with those whose interests may be adverse to the client, the chilling effect on the lawyer-client relationship becomes plain. The benefits of confidentiality were recognized over 150 years ago when Justice Shaw observed in *Hatton v. Robinson*, 31 Mass. (14 Pick.) 416, 422 (1833):

> This principle we take to be this; that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of [attorneys] both in ascertaining their rights in the country, and maintaining them most safely in court ... that the law has considered it the

wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney should be forever sealed.

Model Rule 1.6 codifies a lawyer's obligation to keep the confidences of his client.[1] The rule of keeping client's confidences confidential is mandatory; while section (b) lists limited scenarios in which a lawyer may choose to breach client confidences, such disclosure is not mandatory but optional. The Comment to Rule 1.6 states that the Rule "applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." Rule 1.6 broadens the obligations imposed by DR 4-101 of the Model Code of Professional Responsibility, which prohibited only a lawyer's disclosure of a client's "confidence" (defined as "information protected by the attorney client privilege") or "secret" (defined as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client").

*A. Competing Principles*

If the Committee were to countenance, or indeed encourage, conduct on the part of the receiving lawyer which was in derogation of this strong policy in favor of confidentiality, the Committee would have to identify a more important principle which supports an alternative result.

---

[1] The full text of Rule 1.6 is as follows:

(a) A lawyer shall not reveal information relating to the representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a

criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

As the Committee examines the potentially competing principles, we conclude that their importance pales in comparison to the importance of maintaining confidentiality.

First, it might be argued that keeping the confidential materials and not letting the sending lawyer know they were received will punish carelessness on the part of the sending lawyer and those with whom that lawyer works. However, loss of confidentiality is a very high penalty to pay for a mere slip, particularly when the person or entity paying the "price" is not the individual lawyer responsible for the inadvertent conduct, but rather the client who presumably had nothing to do with the mis-sending of the materials.

Second, it could be asserted that letting the receiving lawyer keep the confidential materials in this situation will encourage more careful conduct on the part of other counsel in the future. Once the catastrophic consequences of a misstep are recognized, lawyers and their clients will conform their future conduct to avoid such an unfortunate result. However, this rationale undervalues the lawyer's existing strong motivation.

Lawyers already have significant incentives to protect confidential materials, not the least of which is the mandate of Model Rule 1.6 itself. Having an inadvertent disclosure act as a total waiver of confidentiality can add little to this equation. The argument also ignores the persistence of human frailty. The possibility of "punishment," no matter how severe, will never prevent, in this modern age of electronic transmission, unlimited photocopies and cases with hundreds of parties, accidents from occurring. The wrong number on the facsimile machine will still be "mis-speed-dialed;" the contents of two envelopes will get switched; "send copies to all defense counsel" will be misunderstood as "send copies to all counsel."

Third, it may be asserted that once confidential materials are missent there

is nothing really to protect. Of course, this argument does not apply if the receiving lawyer becomes aware of the inadvertence before the materials are examined. If the facsimile cover sheet says "to All Defense Counsel" and the receiving lawyer represents the plaintiff, the confidentiality can be completely protected so long as the lawyer refrains from giving in to temptation. But even where the receiving lawyer examines the materials before discovering that they were missent, there is still value in maintaining what confidentiality remains.

First, disclosure to counsel does not have to result in disclosure to counsel's client. Second, there is a significant difference between a lawyer's knowing the contents of documents and that lawyer's being able to use them, for example, at trial either as a basis for questions or by presentation of them to a fact finder. Third, inadvertent disclosure to one counsel or party does not necessarily lead to disclosure to other parties or their counsel if precautions, such as those in confidentiality orders, are taken.

Finally, it might be urged that a receiving lawyer has an obligation to maximize the advantage his client will gain from careful scrutiny of the missent materials. While the "zealous" representation of Canon 7 of the Model Code of Professional Responsibility does not appear *in haec verba* in the Model Rules, it could be argued that a lawyer's "commitment and dedication to the interests of the client," referred to in the Comment to Model Rule 1.3 (calling on a lawyer to act with "reasonable promptness and diligence"), includes an obligation to capitalize on an error of this sort on the part of opposing counsel.

However, there are many limitations on the extent to which a lawyer may go "all out" for the client. The examples cited in Part IV of this opinion are all "opportunities" the lawyer may not seize. Similarly, the Model Rules carefully circumscribe factual and legal representations a lawyer may make, people counsel

may contact and clients counsel can represent. The limitation contemplated by this opinion is entirely consistent with these ethical restraints on uncontrolled advocacy.

## B. The Analogy to Inadvertent Waiver of the Attorney-Client Privilege

In concluding that inadvertent disclosure of confidential materials should not result in the loss of their confidential character we find persuasive the manner in which courts have treated the inadvertent disclosure of materials subject to the attorney-client privilege. While the privilege is a rule of evidence which addresses when an attorney can be compelled to disclose otherwise protected material, whereas confidentiality is a principle designed to govern the lawyer's voluntary conduct, both concepts are designed to further the attorney-client relationship in a similar manner and for the same reasons.

A review of the relevant cases demonstrates, with few exceptions, an unwillingness to permit mere inadvertence to constitute a waiver.[2] Something more, like a failure of counsel to spend any time reviewing the documents to be produced in discovery, is required before a waiver is found. An example of this approach is the decision by the New Mexico Supreme Court in *Hartman v. El Paso Natural Gas Co.*, 107 N.M. 679, 763 P.2d 1144, 1152 (1988), in which the court explained how it would examine counsel's conduct in determining if there is a waiver:

[2] *See* R. Franco & M. Pringle, *The Inadvertent Waiver of Privilege*, 26 Tort & Ins. L.J. 637 (1991); W. Ayers, *Attorney Client Privilege: The Necessity of Intent to Waive the Privilege in Inadvertent Disclosure Cases*, 18 Pac. L.J. 59 (1986); J. Grippando, *Attorney-Client Privilege: Implied Waiver Through Inadvertent Disclosure of Documents*, 39 U. Miami L. Rev 511 (1985); Note, *Inadvertent Disclosure of Documents Subject to the Attorney-Client Privilege*, 82 Mich. L. Rev. 598 (1983).

[3] There are also a minority of cases which would never find waiver unless such a result was intended by counsel.

[There are] five factors which should assist a court in determining whether a document has lost its privilege: (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; (5) whether the overriding interests of justice would be served by relieving a party of its error.

The Committee recognizes that the view that inadvertence should not necessarily give rise to a waiver of the attorney-client is not universally accepted.[3] Some cases and commentators endorse Wigmore's view that "the privilege stands in derogation of the public's right to everyman's evidence," that the privilege results in the suppression of evidence, that the cost of the privilege is clear: evidence which would have been used in the search for truth is excluded. This contrary view finds its philosophical expression in the writings of Judge Marvin E. Frankel who observed:

The effect of every evidentiary privilege, every grant in the law of a right to withhold information, is an added barrier to the search for truth. The lawyer is authorized and required by the privilege to cover up what may be evil and needed facts. The interests injured by the cover-up may be precious ones.

M. Frankel, *Partisan Justice* 64 (1980).

We are taught from first year law school that waiver imports the "intentional relinquishment or abandonment of a known right." Inadvertent production is the antithesis of that concept.... Mendenhall's lawyer (not trial counsel) might well have been negligent in failing to cull the files of th letters before turning over the files. But if we are serious about the attorney-client privilege and its relation to the client's welfare, we should require more than such negligence by counsel before the client can be deemed to have given up the privilege.

*Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 959 (N.D. Ill. 1982).

The cases reflecting what appears to be the minority view conclude that any unforced disclosure of attorney-client privileged communications destroys confidentiality and terminates the privilege, not only for the communications disclosed but also for all related communications.

> [I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels. Short of court compelled disclosure, [citation omitted] or equally extraordinary circumstances, we will not distinguish between various degrees of "voluntariness" in waivers of the attorney-client privilege. *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

The fact that this result is reached is not surprising if one starts with hostility to the privilege. However, the Model Rules certainly reflect a far more positive view toward the importance of maintaining the confidentiality of attorney-client communications, one that this Committee must reflect as it interprets and explicates the Model Rules.

## II. Law Governing Missent Property

While the Committee does not answer questions of law, this principle does not preclude consideration, for present purposes, of the black letter of the law of bailment as it applies to missent property. Indeed, examination of the law of bailment proves instructive in suggesting how, as a matter of ethics, the receiving lawyer should conduct himself when he receives materials clearly not intended for him. That law defines the relationship between sending and receiving lawyer, the rights of the receiving lawyer with respect to the missent property and the obligations receiving lawyer has with respect to its use.

In the question presented to the Standing Committee, the receiving lawyer lawfully possesses the missent materials, but the sending lawyer clearly did not intend to relinquish title to them, either the physical objects or the ideas reflected on each page, such that they would become the "property" of the receiving attorney. The common law of bailments characterizes such mistaken possession as a bailment implied by law, or a constructive bailment.

> When possession of personal property of another is acquired and held under circumstances where the recipient, on principles of justice, ought to keep it safely and restore or deliver it to the owner, as, for example where possession has been acquired accidentally, gratuitously, *through mistake*, or by agreement since terminated for some other purpose than bailment, the law, irrespective of any actual meeting of the minds, any voluntary undertaking, or any reasonable basis for implying mutual benefit, imposes on the recipient the duties and obligations of a bailee. Such bailments are known as constructive and involuntary bailments, and ordinarily the party in possession of the property is regarded as a gratuitous bailee....

8 Am. Jur. 2d *Bailments* § 64 (1980) (emphasis added).

An essential element of the bailment relationship is the absolute obligation of the bailee to return the subject matter of the bailment upon termination of the bailment. *Id.* § 178 (1980). This obligation to return the property is necessarily implied from the mere fact of lawful possession of personal property of another. *Id.* § 178. Where the bailment is not for any particular time, the bailor may terminate it at will. *Id.* § 292. Indeed, the bailment terminates when an unauthorized use is made of the property. *Id.* § 295. If the bailee refuses to return the property, makes an unauthorized disposition of it, or uses it for purposes other than those agreed on, he may be liable for its conversion. *Id.* § 178.

The right of a bailee to use the bailed property and the extent to which it may be used is governed by the intention of the parties to the bailment. *Id.* § 207. In

the absence of any express agreement between the parties, as is the case in the question presented the Committee, no rule of universal application can be laid down:

> Each case must be governed by its own circumstances, such as the character and purpose of the bailment and the nature of the property, in connection with other attending incidents. One test or principle applicable to the subject is whether, from the circumstances, *the consent of the owner to the use may be fairly presumed.*

*Id.* § 207 (emphasis added).

The sending lawyer here, of course, cannot begin to be presumed to have consented to any use of the missent materials by the receiving lawyer. Indeed, the only "use" to which the sending lawyer could be presumed to have consented is the immediate return of the missent property. Any attempt by the receiving lawyer to use the missent letter for his own purposes would thus constitute an "unauthorized use."

### III. Analogous Cases

The present issue is not unlike that presented to the Standing Committee in Informal Opinion 86-1518, Notice to Opposing Counsel of Inadvertent Omission of Contract Provision. (February 9, 1986). In that case a contract was negotiated including one hotly disputed provision insisted upon by B. When B's lawyer forwarded a draft of the agreement to A's lawyer, the key provision, though agreed to, was missing. The Committee was asked what duty, if any, A's lawyer had in the circumstances.

The opinion concluded that A's lawyer had no duty to notify A of the error under Model Rule 1.4 because the client has no decision to make. Nor was the lawyer barred by the confidentiality provisions of Model Rule 1.6 from informing the other side because this disclosure was "impliedly authorized" by the representation. Because under Model Rule 1.2 the lawyer has the authority to decide the technical means to carry out the representation and because the client's right under the same Model Rule to committed and dedicated representation is not unlimited, the opinion concluded that the "error is appropriate for correction between the lawyers without client consultation." In reaching this result the opinion was concerned that to do otherwise and "capitalize on the clerical error," might violate the proscription of Model Rule 1.2(d) not to counsel the client to engage in conduct the lawyer knows is fraudulent as well as the admonishment of Model Rule 4.1(b) not knowingly to fail to disclose a material fact when disclosure is necessary to avoid a client fraud.

While Informal Opinion 86-1516 is not on all fours with the instant situation, its charitable view toward inadvertence, its unwillingness to permit parties to capitalize on errors, its recognition of a limitation on client decision-making authority and its respect for the role of counsel all support the position advanced in this opinion as to counsel's proper conduct upon the inadvertent receipt of confidential information.

The Committee has also considered other hypothetical situations in which an opposing lawyer may have opportunity to "take advantage" of a chance to review and use confidential information. It is the view of the Committee that its dim view of a lawyer's doing so in each of these examples supports the conclusion reached by this opinion. For example, if during a lunch break in a deposition, lawyer B left notes or other materials in a conference room, either in an unlocked briefcase or on the conference room table, there is no respectable argument that competent and diligent representation requires or even permits lawyer A, arriving back from lunch early, to review the materials to which he now has easy access. Nor if, after a closing at lawyer A's office, lawyer B accidentally leaves a file or a briefcase behind would it be proper to assert that lawyer A could take

advantage of this inadvertence and rifle the file or inspect the briefcase before returning it. Indeed, in the view of the Committee that lawyer would have an obligation to notify the lawyer who left her briefcase that it had been found. Finally, if in positioning an overhead projector on a shared counsel table in a courtroom during a recess, court personnel inadvertently move the prosecutor's notes into a position in front of the defense counsel's place at the table, it seems clear to the Committee that defense counsel would have an absolute obligation to return the materials without any examination or copying.

## IV. Good Sense and Reciprocity

The analysis of this issue as an ethical matter should not obscure some more practical considerations that suggest the correct course for the receiving lawyer is to inform sending lawyer and return the documents. The immediate reaction of receiving counsel might be that the use of the missent materials can only serve to advantage his client. Nonetheless, it is clear there are advantages to doing just the opposite. First, instances of inadvertent production of documents tend not to occur only on one side. While a lawyer today may be the beneficiary of the opposing lawyer's misstep, tomorrow the shoe could be on the other foot. Second, when it is discovered that the confidential materials were retained and used the result could be similar to that which occurred recently in Baltimore when the court learned after jury selection that defendants' jury selection strategy was misdirected to plaintiffs' counsel by fax. "I find that the plaintiffs' attorneys have an advantage over the defense attorneys. Specifically, the plaintiffs know pretty well which prospective jurors the defense is going to strike . . . . They knew the inner-most thinking of the defense counsel." Baltimore City Personal Injury and Wrongful Death Asbestos Cases, Pretrial

Hearing, June 5, 1991, Transcript at 4521, Circuit Court for Baltimore City, File No. 89236704. The judge struck the jury and ordered the entire process to begin again, at no small cost to plaintiffs, a cost that would have been expanded exponentially if the judge had not learned of this fact until the trial was over or when it was on appeal. Of similar effect is the recent example involving the Washington, D.C. office of a Texas law firm. Though in that case the confidential materials were intentionally delivered and, because they were from the government, special statutory provisions were involved, the fact that the firm felt compelled to withdraw because the firm was exposed to these materials, suggests the hazardous pathway which one must traverse after receipt of confidential materials.[4] "Taking a bet" on what reaction a court may have when an inadvertent disclosure becomes known can be a risky proposition indeed. Third, the credibility and professionalism inherent in doing the right thing can, in some significant ways, enhance the strength of one's case, one's standing with the other party and opposing counsel, and one's stature before the court.

## Conclusion

The preamble to the Model Rules correctly notes that "virtually all difficult ethical problems arise from the conflict between a lawyer's responsibility to clients, to the legal system and to the lawyer's interest in remaining an upright person while earning a satisfactory living." Similarly, the same introduction observes that "a lawyer is also guided by personal conscience and the approbation of professional peers." In this instance, those principles, as well as the Model Rules, the law of bailment and good sense all come together to support our conclusion that receiving counsel's obligations under those circumstances are to avoid reviewing the materials, notify

---

[4]Jonathan Groner, *Akin, Gump Returns "Hot" Documents to Sender*, Legal Times (Washington,    D.C.), October 5, 1992, at 8.

sending counsel if sending counsel remains ignorant of the problem and abide sending counsel's direction as to how to treat the disposition of the confidential materials. This result not only fosters the important principle of confidentiality, avoids punishing the innocent client and conforms to the law of bailment, but also achieves a level of professionalism which can only redound to the lawyer's benefit.

## Formal Opinion 92-369
### December 7, 1992

### Disposition of Deceased Sole Practitioners' Client Files and Property

*To fulfill the obligation to protect client files and property, a lawyer should prepare a future plan providing for the maintenance and protection of those client interests in the event of the lawyer's death. Such a plan should, at a minimum, include the designation of another lawyer who would have the authority to review client files and make determinations as to which files need immediate attention, and who would notify the clients of their lawyer's death.*

*A lawyer who assumes responsibility for the client files and property of a deceased lawyer must review the files carefully to determine which need immediate attention. Because the reviewing lawyer does not represent the client, only as much of the file as is needed to identify the client and to make a determination as to which files need immediate attention should be reviewed. Reasonable efforts must be made to contact all clients of the deceased lawyer to notify them of the death and to request instructions in accordance with Rule 1.15.*

The Committee has been asked to render an opinion based on the following circumstances. A lawyer who has a large solo practice dies. The lawyer had hundreds of client files, some of which concern probate matters, civil litigation and real estate transactions. Most of the files are inactive, but some involve ongoing matters. The lawyer kept the active files at his office; most of the inactive files he removed from the office and kept in storage at his home.

The questions posed are two:

1) What steps should lawyers take to ensure that their clients' matters will not be neglected in the event of their death?

2) What obligations do lawyers representing the estates of deceased lawyers, or appointed or otherwise responsible for review of the files of a lawyer who dies intestate,, have with regard to the deceased lawyer's client files and property?

*I. Sole Practitioner's obligations with regard to making plans to ensure that client matters will not be neglected in the event of the sole practitioner's death*

The death of a sole practitioner could have serious effects on the sole practitioner's clients. *See Program: Preparing for and Dealing with the Consequences of the Death of a Sole Practitioner,* prepared by the ABA General Practice Section, Sole Practitioners and Small Law Firms Committee, August 7, 1986. Important client matters, such as court dates, statutes of limitations, or document filings, could be neglected until the clients discover that their lawyer has died. As a precaution to safeguard client interests, the sole practitioner should have a plan in place that will ensure insofar as is reasonably practicable that client matters will not be neglected in the event of the sole practitioner's death.

Model Rules of Professional Conduct 1.1 (Competence) and 1.3 (Diligence) are relevant to this issue, and read in pertinent part:

### Rule 1.1 Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation.

# Tab

# O

(312) 269-8862

jgale@seyfarth.com

January 28, 2005

**VIA FACSIMILE & U.S. MAIL**
**(312) 782-1332**

Sharon Finegan Patterson, Esq.
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

> ### *Re:*    *Mary Corbett v. DRH Cambridge Homes et al*

Dear Ms. Patterson:

We originally noticed Ms. Corbett's deposition for October 27, 2004. You cancelled it and promised to provide new dates. We spoke with you on November 29, 2004, at which time you said that you would give us a new and firm date for Ms. Corbett's deposition by December 10, 2004 and the date would be sometime in early January. When you failed to do so, we sent you a new notice setting Ms. Corbett's deposition for February 1, 2005. We confirmed this date with you by letter of January 14, 2005. I called you several times this week to re-confirm. You did not call me back. Finally, this morning, your assistant called and said you were canceling yet again because you have a court-ordered mediation that day. While I understand the obligations that handling other litigation matters impose, it does not appear to me that you are acting in good faith and are simply stalling on producing Ms. Corbett for her very overdue deposition. I would like to see a copy of the order for the mediation. I assume this is not a problem.

If I do not hear from you with a firm date for Ms. Corbett's deposition by January 31, 2005, as set forth in the message from your assistant, we will file a Rule 37 motion. You have also ignored my request for a LR 37 conference on the inadvertent disclosure issue I have written to you about on two occasions. Finally, we should agree on a date when both sides will respond to the outstanding paper discovery in the state court case.

Sharon Finegan Patterson, Esq.
January 28, 2005
Page 2

   I look forward to discussing these issues with you in more detail. Please give me the courtesy of a return call.

        Very truly yours,

        SEYFARTH SHAW LLP


        Joan E. Galc

JEG:kr
cc: Steven H. Goodman, Esq.
   David Morice, Esq.
   Kristina Kerwin, Esq.

CH1 10848768.1

# Tab

# P

### SHARON FINEGAN PATTERSON, P.C.
#### ATTORNEY AT LAW
#### 39 SOUTH LASALLE STREET- SUITE 1014
#### CHICAGO, ILLINOIS 60603

TELEPHONE (312) 855-1076
FACSIMILE (312) 782-1332

January 31, 2005

By Facsimile
Ms. Joan Gale
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re: Mary Corbett v. DRH Cambridge Homes,
Inc. and D.R. Horton, Inc., Case No. 04 C 3344

Dear Ms. Gale:

I received your letter to Ms. Patterson. In the message that I left for you with your assistant on Friday, January 28, 2005, I stated that Ms. Patterson would be contacting you no later than February 2, 2005 regarding plaintiff's deposition. Your letter incorrectly states the date of January 31, 2005 rather than the correct date of February 2, 2005. Thank you.

Very truly yours,

Eva Miechur, Legal Assistant for
Sharon Finegan Patterson

# Tab

# Q

## SHARON FINEGAN PATTERSON, P.C.
### ATTORNEY AT LAW
**39 SOUTH LASALLE STREET- SUITE 1014**
**CHICAGO, ILLINOIS 60603**

TELEPHONE  (312) 855-1076
FACSIMILE  (312) 782-1332


January 31, 2005

By Facsimile
Ms. Joan Gale
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re: Mary Corbett v. DRH Cambridge Homes,
Inc. and  D.R. Horton, Inc.

Dear Ms. Gale:

In response to your letter dated January 28, 2005, I wish to avoid arguing needlessly with you over details but you did not ever obtain any confirmation from me that plaintiff's deposition would in fact proceed on February 1, 2005 nor did I ever select that date, and your suggestion in your letter to the contrary is wrong. I am providing you with dates for plaintiff's deposition: February 22, 2005, February 24, 2005, or February 25, 2005. Please advise which date you would prefer.

With respect to extensions of time to respond to each other's discovery requests, your previous letter referenced an extension for both of us to February 18, 2004 and that is the date I have diaried for both of us as the new deadline.

Very truly yours,

Sharon F. Patterson

Sharon Finegan Patterson  EM

# Tab

# R

(312) 269-8862

jgale@seyfarth.com

February 1, 2005

**VIA FACSIMILE & U.S. MAIL**
**(312) 782-1332**

Sharon Finegan Patterson, Esq.
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

      ***Re:***     ***Mary Corbett v. DRH Cambridge Homes et al***

Dear Ms. Patterson:

      This will confirm that we will take the deposition of Mary Corbett beginning at 10:00 a.m. at my office on February 25, 2005 on both her state and federal claims.

      You still owe me a call regarding the inadvertent disclosure issue. Please contact me this week to discuss that issue.

                    Very truly yours,

                    SEYFARTH SHAW LLP

                    Joan E. Gale

JEG:kr
cc:     Steven H. Goodman, Esq.
         David Morice, Esq.
         Kristina Kerwin, Esq.

CH1 10850079.1

# Tab

# S

**SHARON FINEGAN PATTERSON, P.C.**
ATTORNEY AT LAW
39 SOUTH LASALLE STREET- SUITE 1014
CHICAGO, ILLINOIS 60603

TELEPHONE (312) 855-1076
FACSIMILE (312) 782-1332

February 24, 2005

By Facsimile
Ms. Joan Gale
Seyfarth Shaw
55 E. Monroe
42nd Floor
Chicago, Il 60603

Re: Mary Corbett v. DRH Cambridge Homes,
Inc. and D.R. Horton, Inc., Case No. 04 C 3344

Dear Ms. Gale:

I have just been informed that the deposition of plaintiff, which was scheduled for tomorrow pursuant to defendants' Notice of Deposition in the above-captioned federal court lawsuit, must be rescheduled due to the illness of plaintiff's young son. I will contact you with a new date by early next week. Thank you.

Very truly yours,

Sharon Finegan Patterson