# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARY BETH CORBETT, )
 )
       Plaintiff, )    Case No. 04 C 3344
 )
    v. )    Judge Leinenweber
 )
DRH CAMBRIDGE HOMES, INC., and )    Magistrate Judge Bobrick
D.R. HORTON, INC., )
 )
       Defendants. )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND TO COMPEL ARBITRATION

Defendants DRH Cambridge Homes, Inc. and D.R. Horton, Inc. by their attorneys, submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint and Compel Arbitration. In support of their motion, Defendants state as follows:

### INTRODUCTION

Plaintiff Mary Corbett ("Plaintiff") entered into a valid, enforceable agreement with Defendants to arbitrate all employment related claims. Each legal claim set forth in Plaintiff's Complaint falls squarely within that agreement. The Court should not allow Plaintiff to evade her obligations and deny Defendants the benefits of the parties' agreement. Pursuant to the Federal Arbitration Act, the strong federal policy in favor of upholding arbitration agreements, and the overwhelming authority in this Circuit and the Supreme Court of the United States, this Court should grant Defendants' motion to compel arbitration.

## SUMMARY OF FACTS[1]

In 1988, Plaintiff became employed by Lexington Homes as a Sales Associate, selling homes in the greater Chicagoland area. In approximately 1990, Plaintiff became a Regional Sales Manager for Lexington. Compl. ¶¶ 7-8. In 1995, Cambridge Properties, a partnership in which Cambridge Homes, Inc. was a general partner, acquired Lexington Homes and Cambridge Homes, Inc. became Plaintiff's employer. Compl. ¶ 9; Declaration of Steven H. Goodman ¶ 2 ("Goodman Decl."), at Tab A.

In January 1999, Defendant D.R. Horton, Inc. ("D.R. Horton") acquired the assets of Cambridge Properties and established DRH Cambridge Homes, Inc. ("DRH Cambridge"), a wholly-owned subsidiary of D.R. Horton. Goodman Decl. ¶¶ 3-4; Compl. ¶ 11. At that time, D.R. Horton became Plaintiff's employer. Goodman Decl. ¶ 3; Compl. ¶ 11. D.R. Horton is engaged in the business of building and selling homes nationwide. DRH Cambridge builds and sells home in the greater Chicago metropolitan area. Goodman Decl. ¶ 4.

In January 1999 when it became her employer, D.R. Horton required Plaintiff to agree to arbitrate all disputes arising out of her employment. On January 19, 1999, Plaintiff signed an "Acknowledgement Of Understanding Personnel Policy" which included an agreement to arbitrate all disputes arising out of her employment or termination, as follows:

> In the event there is any dispute arising out of your employment with D.R. Horton, Inc. or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D.R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if inapplicable, to any applicable state arbitration statute, or any successor or replacement statutes.

---

[1] Citations to facts set forth in Plaintiff's Complaint will be abbreviated as (Compl. ¶ __).

See Tab B. Thereafter, Plaintiff signed identical arbitration agreements on June 1, 2000 and January 16, 2001, when she received new copies of D.R. Horton's personnel guidelines. See Tab B.

On March 28, 2003, Plaintiff's employment was terminated in connection with improper use and reporting of gift certificates which were being used as a sales award. Goodman Decl. ¶ 5; see Compl. ¶¶ 16-26.

On May 11, 2004, Plaintiff filed her Complaint against Defendants in the Northern District of Illinois asserting claims of discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964. Compl. ¶¶ 83, 126, 169, 212. Plaintiff did not serve her federal Complaint on Defendants until August 9, 2004, and Defendants filed their Answer and Affirmative Defenses to Plaintiff's federal Complaint on August 11, 2004.

On March 22, 2005, Defendants took Plaintiff's deposition regarding her federal court claims against Defendants. At that time, Plaintiff admitted under oath that she signed not one, but three arbitration agreements with Defendants, dated January 19, 1999, June 1, 2000, and January 16, 2001. See Tab B.

On March 24, 2005, Defendants' counsel Joan E. Gale sent correspondence to Plaintiff's counsel Sharon Finegan Patterson advising her that based on Plaintiff's sworn testimony admitting that she signed the three arbitration agreements, Defendants would pursue enforcement of these agreements. See Tab C.

ARGUMENT

Plaintiff's claims against Defendants allege discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, both federal claims which serve as the basis for this Court's jurisdiction. Thus, federal law determines the appropriate forum for the resolution of Plaintiff's claims. *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 225-27 (1987). As

3

recently held by the Supreme Court of the United States, the Federal Arbitration Act ("FAA") expounds a strong policy in favor of upholding arbitration agreements. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288-90 (2002) (the Court stated "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Significantly, the United States Supreme Court has repeatedly held that arbitration agreements in the employment context should be rigorously enforced. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105, 116 (2001) (the Court stated that "[a]rbitration agreements allow parties to avoid the cost of litigation, a benefit that may be of particular importance in employment litigation"); *Waffle House*, 534 U.S. at 289; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (the Court stated that it is plaintiff's burden to demonstrate that "Congress intended to preclude a waiver of judicial forum" of plaintiff's employment claims). The FAA provides that written agreements to resolve disputes through arbitration are, "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Circuit City*, 532 U.S. 105 (holding that in the employment context, "only contracts of employment of transportation workers are exempted from the FAA's coverage").

The FAA empowers the Court to compel arbitration when a party has failed, neglected, or like Plaintiff, refused to comply with an arbitration agreement.[2] 9 U.S.C. § 4. As a matter of

---

[2]      The Illinois Uniform Arbitration Act ("IUAA") also empowers this Court to stay proceedings and compel arbitration where a written agreement to arbitrate exists:

**Sec. 1. Validity of arbitration agreement.** A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract, except that any agreement between a patient and a hospital or health care provider to submit to binding arbitration a claim for damages arising out of (1) injuries alleged to have been received by a patient, or (2) death of a patient, due to hospital or health care provider negligence or other wrongful act, but not including intentional torts, is also subject to the Health Care Arbitration Act.

4

established law and federal policy, "any doubts concerning the scope of arbitrable issues should

be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460

U.S. 1, 24, 103 S. Ct. 427 (1983); *see also Matthews v. Rollins Hudig Hall Co.,* 72 F.3d 50 (7th

Cir. 1995). Indeed, as the Seventh Circuit has reiterated on numerous occasions "an order to

arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute." *Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 390 (7th Cir. 1984) (quoting *United*

*Steelworkers of America v. Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347 (1960)).

## I. PLAINTIFF SIGNED A VALID, IRREVOCABLE, AND ENFORCEABLE AGREEMENT TO ARBITRATE

The parties entered into a valid, binding, written agreement to resolve all employment

related disputes through arbitration. Plaintiff bears the burden to establish that the arbitration

agreement is unenforceable. *Witz v. Apps,* 2000 U.S. Dist. Lexis 16791 at *4 (N. D. Ill. 2000).

To determine whether a valid arbitration agreement exists, a court looks to the state law

governing the formation of contracts. *Id.*; *See also Kahalnik v. John Hancock Funds, Inc.,* 1996

U.S. Dist. Lexis 2618 at *9-10 (N. D. Ill. 1996).

Under Illinois contract law, the parties entered into a valid and enforceable contract

whereby they agreed to arbitrate their claims. By providing Plaintiff with the arbitration

agreement, D.R. Horton was offering to continue Plaintiff's employment upon the terms and

conditions set forth in the agreement. Plaintiff agreed to the terms of the arbitration agreement,

---

**Sec. 2. Proceedings to compel or stay arbitration**. On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

710 ILCS 5/1 *et seq.*

CHI 10880208.1

as evidenced by her signature on the agreement as well as by her continued employment with D.R. Horton.

Valid consideration for the arbitration agreement also exists. D. R. Horton agreed to continue to employ Plaintiff (as an at-will employee) in exchange for Plaintiff's promise to submit her employment related disputes to arbitration. D.R. Horton's continued employment of Plaintiff is valid consideration sufficient to support the creation of an enforceable contract. *Bauer v. Morton's of Chicago*, 2000 U.S. Dist Lexis 1453 (N. D. Ill. 2000). Further, the parties exchanged <u>mutual</u> promises to arbitrate with each other and to be bound by the arbitrator's decision.[3] Such mutual promises are sufficient consideration. *Michalski v. Circuit City Stores*, 177 F.3d 634, 637 (7th Cir. 1999) (holding that the signature of an employee to be bound by arbitration in the same agreement in which the employer makes the same agreement clearly indicated a mutual promise, binding on both parties and creating sufficient consideration); *see also Johnson v. Travelers Property Casualty Corp.*, 56 F. Supp. 2d 1025 (N. D. Ill. 1999) (Bucklo, J.).

Thus, because all elements necessary for contract formation are present, a valid contract exists between the parties obligating them to submit all employment related claims to arbitration. Moreover, "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it' deal and consent to the agreement is secured because of hard bargaining positions or the pressure of financial circumstances." *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999). Therefore, absent any showing that Defendants wrongfully used their bargaining power, Plaintiff is bound by the terms of the

---

[3]     Like Plaintiff, D.R. Horton also agreed to "submit all such disputes exclusively to final and binding arbitration." See Tab B.

6

agreement into which she entered. *Id.*; *see also Alexander v. Standard Oil*, 97 Ill. App. 3d 809, 423 N.E.2d 578 (5th Dist. 1981).

Accordingly, Plaintiff must be held to the terms and conditions of the signed agreement to arbitrate all employment related claims.

## II. PLAINTIFF'S CLAIMS FOR RELIEF ARE WITHIN THE COVERAGE OF THE ARBITRATION AGREEMENT

Once the Court determines that the making of the agreement to arbitrate is not in issue, the Court must order the parties to proceed to arbitration in accordance with their agreement. *Sarver v. Trans Union, LLC*, 264 F. Supp. 2d 691 (N. D. Ill. 2003) (Bucklo, J.). When a valid agreement to arbitrate exists and the underlying dispute falls within the scope of that agreement, the dispute must be submitted to arbitration. *See Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 390 (7th Cir. 1984). The FAA establishes as a matter of federal law that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Stanley,* 1997 U.S. Dist. LEXIS 21734, at *5-7; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50 (7th Cir. 1995).

Plaintiff's claims are subject to arbitration under the Policy because they relate to her employment with and/or termination from Defendants. Because Plaintiff agreed to submit her claims to arbitration, this Court should dismiss the Complaint and compel arbitration. *See Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 390 (7th Cir. 1984) ("an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). As the Supreme Court of the United States instructed, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the

7

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## III.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT, NOT MERELY STAY THE PROCEEDINGS

Sections 3 and 4 of the FAA authorize the Court to stay proceedings and compel

arbitration (respectively) when an issue before the Court is subject to an arbitration agreement.

*See* 9 U.S.C. §§ 3, 4. The Court, however, may dismiss a case in its entirety if all issues before it

are subject to arbitration. *See Hormel Foods Corp. v. Cereol, S.A.*, No. 01-2243, 2002 WL

31185859, at *4 n.5 (D. Minn. Sept. 30, 2002) ("Federal courts may treat motions to compel

arbitration as motions to dismiss under Rule 12(b) of the Fed. R. Civ. P."); *Green v. Ameritech

Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("dismissal with prejudice of a plaintiff's

discrimination claims has no effect upon a subsequent challenge to an arbitrator's ruling"); *see

also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (dismissing

action where all issues were arbitrable). As indicated above, each of Plaintiff's allegations in her

Complaint is specifically covered by the parties' agreement to submit those claims to final,

binding arbitration. Thus, this Court should dismiss Plaintiff's Complaint (not merely stay the

proceedings) and order Plaintiff to arbitrate her claims.

8

**CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety (or in the alternative stay the proceedings) and order Plaintiff to submit her claims to arbitration in accordance with the terms and conditions of the parties' agreement.

Respectfully submitted,
DRH CAMBRIDGE HOMES et al,

By _____
One of Their Attorneys

Joan E. Gale
Kristina M. Kerwin
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603
(312) 346-8000
April 5, 2005

9

CH1 10880208.1

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she caused a copy of the foregoing

Defendants' Memorandum of Law in Support of Their Motion to Compel Arbitration to be

served on the following attorney of record by facsimile this $\underline{\quad}^{\text{th}}$ day of April, 2005:

Sharon Finegan Patterson
39 S. LaSalle Street, Suite 1014
Chicago, IL 60603

Kristina M. Kerwin

10

CASE NO. _O4cv 3344_

FILE DATE: _____

ATTACHMENT #. _____

EXHIBIT _____ A _____

TAB (DESCRIPTION) _____

## DECLARATION OF STEVEN H. GOODMAN

I, Steven H. Goodman, make this declaration on the basis of my own personal knowledge and if I were called as a witness, I could and would testify competently to the following facts:

1.     I am Vice President and General Counsel of DRH Cambridge Homes, Inc. ("DRH Cambridge"). I have held this position since 1999. Prior to that, I served as General Counsel of Cambridge Homes, Inc. since 1992.

2.     In 1995, Cambridge Properties, a partnership in which Cambridge Homes, Inc. was a general partner, acquired Lexington Homes. At that time, Cambridge Homes, Inc. became the employer of all persons, including Mary Corbett, who had been working for Lexington Homes.

3.     In January 1999, D.R. Horton, Inc. ("D.R. Horton") acquired the assets of Cambridge Properties, and established DRH Cambridge Homes, Inc. ("DRH Cambridge"). At that time, D.R. Horton became the employer of all persons, including Mary Corbett, who had been working for Cambridge Homes, Inc.

4.     DRH Cambridge is a wholly owned subsidiary of D.R. Horton. All personnel of DRH Cambridge are employees of D.R. Horton. D.R. Horton is engaged in the business of building and selling homes nationwide. DRH Cambridge builds and sells home in the greater Chicago metropolitan area.

5.     On March 28, 2003, Plaintiff's employment was terminated in connection with improper use and reporting of gift certificates which were being used as a sales award.

CHI 10880509.1

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Illinois law, that the

foregoing is true and correct, and that this declaration was executed on this ___5___ day of April,

2005 at Libertyville, Illinois.

_____
Steven H. Goodman

CH1 10880509.1

CASE NO. _____ 04CV 3344 _____

FILE DATE: _____

ATTACHMENT #. _____

EXHIBIT _____ B _____

TAB (DESCRIPTION) _____

## ACKNOWLEDGMENT OF UNDERSTANDING PERSONNEL POLICY

I acknowledge having received and read my personal copy of the D.R. Horton, Inc. Personnel Policy Guidelines. I understand that the policies and procedures contained within this Employee Handbook are subject to revision and/or revocation at any time and for any reason deemed necessary by management. I further understand that I am personally responsible for remaining familiar with the contents of this manual and all other posted and/or published Company policies and procedures.

By signing below, I acknowledge that I understand that I have a right to terminate my employment at any time, with or without notice, for any reason, with or without cause, and the Company has that same right. I further understand that the Company reserves the right to alter, amend, modify or terminate any benefits or provisions contained in any plans, policies or procedures at any time, with or without notice to me, and that neither this document, nor any other plan, policy or procedure, creates a contract of employment between the Company and me.

I acknowledge and understand that any property or areas used solely by me as an employee, and any computer or other equipment used in conjunction with my employment, may be subject to search or inspection without my consent. Further, as a condition of my employment, I hereby expressly authorize and consent to acess by authorized company personnel. The Company reserves the right to search any property or area used solely by an employee without the employee's consent.

In the event there is any dispute arising out of your employment with D.R. Horton, Inc. or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D.R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if inapplicable, any applicable state arbitration stature, or any successor or replacement statutes, upon a request submitted in writing to the Legal Department in the Corporate office within one (1) year of the date when the dispute first arose, or within one (1) year of the termination of employment, whichever occurs first. Any failure to request arbitration timely shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration. The limitations period set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

I agree, as shown by my signature, to accept, endorse and abide by all Company policies and procedures and agree to arbitrate any disputes.

_Mary Beth Corbett_
**Employee Signature**

_Mary Beth Corbett_
**Employee Name (Typed or Printed)**

_1-19-99_
**Date**

A3

DRH000691

Please Sign and Return to the Corporate Human Resource Department

## ACKNOWLEDGMENT OF UNDERSTANDING PERSONNEL POLICY

I acknowledge having received and read my personal copy of the D.R. Horton, Inc. Personnel Policy Guidelines. I understand that the policies and procedures contained within this Employee Handbook are subject to revision and/or revocation at any time and for any reason deemed necessary by management. I further understand that I am personally responsible for remaining familiar with the contents of this manual and all other posted and/or published Company policies and procedures.

By signing below, I acknowledge that I understand that I have a right to terminate my employment at any time, with or without notice, for any reason, with or without cause, and the Company has that same right. I further understand that the Company reserves the right to alter, amend, modify or terminate any benefits or provisions contained in any plans, policies or procedures at any time, with or without notice to me, and that neither this document, nor any other plan, policy or procedure, creates a contract of employment between the Company and me.

I acknowledge and understand that any property or areas used solely by me as an employee, and any computer or other equipment used in conjunction with my employment, may be subject to search or inspection without my consent. Further, as a condition of my employment, I hereby expressly authorize and consent to access by authorized company personnel. The Company reserves the right to search any property or area used solely by an employee without the employee's consent.

In the event there is any dispute arising out of your employment with D.R. Horton, Inc. or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D.R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if inapplicable, any applicable state arbitration stature, or any successor or replacement statutes, upon a request submitted in writing to the Legal Department in the Corporate office within one (1) year of the date when the dispute first arose, or within one (1) year of the termination of employment, whichever occurs first. Any failure to request arbitration timely shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration. The limitations period set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

I agree, as shown by my signature, to accept, endorse and abide by all Company policies and procedures and agree to arbitrate any disputes.

_Meny Corlect_
Employee Signature

_Mary Corbett_
Employee Name (Typed or Printed)

_6-1-00_
Date



A3

Please sign and return to the Corporate Human Resources Department

## EMPLOYEE ACKNOWLEDGEMENT FORM

The policy handbook describes important information about D. R. Horton, Inc., and I understand that I should consult the Human Resources Department regarding any questions not answered in the handbook. I have entered into my employment relationship with D. R. Horton, Inc. voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or D. R. Horton, Inc. can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.

Since the information, policies, and benefits described here are subject to change, I acknowledge that revisions to the handbook may occur. All such changes will be communicated through official notices, and I understand that revised information may supersede, modify, or eliminate existing policies. Only members of the Executive Committee of D. R. Horton, Inc. have the ability to adopt any revisions to the policies in this handbook.

I acknowledge and understand that any property or areas used solely by me as an employee, and any computer or other equipment used in conjunction with my employment, may be subject to search or inspection without my consent. Further, as a condition of my employment, I hereby expressly authorize and consent to access by authorized company personnel. The Company reserves the right to search any property or area used solely by an employee without the employee's consent.

In the event there is any dispute arising out of your employment with D. R. Horton, Inc., or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D. R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if inapplicable, any applicable state arbitration stature, or any successor or replacement statutes, upon a request submitted in writing to the Legal Department in the Corporate office within one (1) year of the date when the dispute first arose, or within one (1) year of the termination of employment, whichever occurs first. Any failure to request arbitration timely shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration. The limitations period set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document. I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it. I agree, as shown by my signature, to accept, endorse and abide by all Company policies and procedures and to arbitrate any disputes.

EMPLOYEE'S NAME (printed): _Mary Beth Corbett_

EMPLOYEE'S SIGNATURE: _Mary Beth Corbett_

EMPLOYEE'S SOCIAL SECURITY NUMBER: _344 62 3074_

DATE HANDBOOK RECEIVED: _1-16-01_

2

DRH000659

CASE NO. _____ 04 cv 3344 _____

FILE DATE: _____

ATTACHMENT #. _____

EXHIBIT _____ C _____

TAB (DESCRIPTION) _____

(312) 269-8862

jgale@seyfarth.com

March 24, 2005

**VIA FACSIMILE & U.S. MAIL**
**(312) 782-1332**

Sharon Finegan Patterson, Esq.
Law Office of Sharon Finegan Patterson
39 South LaSalle Street, Suite 1014
Chicago, IL 60603

     *Re:*    *Mary Corbett v. DRH Cambridge Homes et al*

Dear Ms. Patterson:

     Based on Ms. Corbett's testimony at her deposition on March 22, 2005 acknowledging her signatures on the agreements to arbitrate any claims she may have arising from her employment with Defendants, this is to advise you that unless you agree to proceed with arbitration, we will seek appropriate orders from both the state and federal court judges on this issue. I will be out of the office next week and in my absence, please feel free to contact Kristina Kerwin to discuss this issue.

     Thank you.

               Very truly yours,

               SEYFARTH SHAW LLP

               /s/

               Joan E. Gale

JEG:kr
cc:    Steven H. Goodman, Esq.
       David Morice, Esq.
       Kristina Kerwin, Esq.

CH1 10875453.1